**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JBC STRUCTURED PRODUCTS LLC,    )
    )
    )    Case No.
    Plaintiff    )
    )
NAVITAS SEMICONDUCTOR    )
CORPORATION,    )
    )
    Defendant.    )

**COMPLAINT**

Plaintiff, JBC Structured Products LLC ("JBC" or "Plaintiff"), files this action through its undersigned counsel against Defendant, Navitas Semiconductor Corporation ("Navitas," the "Company" or "Defendant") for breach of contract that occurred on or about December 8, 2021, and alleges as follows:

**NATURE OF THE ACTION**

1. This action is for an alleged breach of contract. JBC brings this action to remedy Navitas' breach of a warrant agreement governing Defendant's publicly traded warrants (the "Public Warrants"). Defendant's breach, as further described below, damaged JBC by over a million dollars while benefitting Navitas and its insiders.

2. The Public Warrants were originally issued by Live Oak Acquisition Corp. II ("Live Oak SPAC"), a special purpose acquisition company ("SPAC"). Live Oak SPAC issued the Public Warrants pursuant to a warrant agreement dated December 2, 2020, as Exhibit 4.4 to its Form S-1 registration statement filed with the Securities Exchange Commission ("SEC" or the "Commission"), a copy of which is attached hereto as **Exhibit A** (the "Warrant Agreement"). The SEC declared the Form S-1 effective December 2, 2020.

1

3.      Live Oak SPAC and Legacy Navitas announced the completion of the business combination October 19, 2021 (the "Business Combination") pursuant to a May 6, 2021, business combination agreement ("BCA") whereby Defendant expressly assumed all of Live Oak SPAC's obligations under the Warrant Agreement as the surviving post-merger entity upon the completion of the Business Combination.

4.      Pursuant to the Warrant Agreement's clear, unambiguous terms, Public Warrant Holders such as JBC were entitled to exercise the right to buy one ordinary share of Navitas' common stock at a price of $11.50 per full share if three conditions were met.

a.  First, the "Exercise Period" must be open, which occurs "on the later of: (i) the date that is thirty (30) days after the first date on which the Company completes a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination, involving the Company and one or more businesses (a "Business Combination"), and (ii) the date that is twelve (12) months from the date of the closing of the Offering[1]." Warrant Agreement § 3.2.  The later date is twelve (12) months from the closing of the offering, meaning December 7, 2021.

b.  Second, the shares of common stock underlying the Public Warrants (the "Warrant Shares") must be registered under the Securities Act via an effective registration statement. *Id*. At § 3.3.2.

c.  Third, at the time of the exercise there must be a current prospectus relating to the Warrant Shares. *Id*.

---

[1] The Offering is defined as the Initial Public Offering, which closed on December 7, 2020. *See* Warrant Agreement, at Recitals p. 1 ("the Company is engaged in an initial public offering (the "Offering") of units of the Company's equity securities"); *see also* https://ir.navitassemi.com/static-files/bee88ff7-74ad-4fd7-aa94-5c47793d3585, p. 3 ("Initial Public Offering" or "IPO" are to LOKB's initial public offering of units, which closed on December 7, 2020").

5. All conditions were met as of December 7, 2021. The exercise period should have been open because Navitas registered the Public Warrants and the Warrant Shares under the Securities Act on a registration statement Form S-1, initially filed with SEC on November 24, 2021, with the operative amended Form S-1 being filed December 2, 2021 (the "Form S-1") and declared effective December 6, 2021. The Form S-1 contained a current prospectus relating to the Warrants and the Warrant Shares. Thus, by its terms, the Public Warrants became exercisable for shares of Navitas on December 7, 2021.

6. JBC owned Defendant's Public Warrants beginning on November 24, 2021. Beginning December 8, 2021, Plaintiffs owned Public Warrants and were ready, willing, and able to exercise their Public Warrants. At the time, the Public Warrants should have been exercisable because each of the three conditions precedent in the Warrant Agreement were satisfied.

7. JBC attempted to exercise its Public Warrants on December 8 and December 10, 2021, but these exercise attempts were denied by Continental Stock Transfer & Trust Company ("Continental") and/or Interactive Broker Client Services ("IBCS") because Navitas failed to take the necessary actions, such as informing the warrant agent and/or providing necessary documentation to the warrant agent and/or Continental, to open the exercise of the Public Warrants.

8. Even though all three conditions precedent had been met and the Public Warrants were exercisable pursuant to the Warrant Agreement, Navitas unlawfully prevented, and/or caused the denial of JBC's attempts to exercise its Public Warrants. These actions breached, among other things, Navitas' contractual obligations and its duty of good faith and fair dealing to JBC and prevented JBC from buying Navitas shares for $11.50 per share and selling them for a higher price. By preventing JBC's lawful attempts to exercise its Public Warrants and sell the underlying shares, Navitas directly caused over a million dollars in damages to JBC.

9.      Instead, by preventing JBC from exercising its Public Warrants in contravention of the Warrant Agreement's terms, Navitas caused JBC to sell its Public Warrants at substantially less value and lose the profits that were available to JBC.

10.     Alternatively, if the Public Warrants were not exercisable because of Navitas' failure to maintain a current prospectus relating to the Form S-1, then Navitas is liable to JBC for breach of contract for having failed to file and/or maintain then current prospectus relating to the Public Warrants and Warrant Shares.

11.     Plaintiff now seeks damages arising from Navitas preventing and/or refusing to take the necessary actions to permit the exercise of Plaintiffs' Public Warrants pursuant to the Warrant Agreement and the Company's SEC filings.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Navitas and the amount in controversy substantially exceeds $75,000. Subject matter jurisdiction also exists under 28 U.S.C. § 1331 because the complaint raises questions of federal law regarding the proper interpretation of the Securities Act and federal regulations promulgated thereunder.

13.     This Court may exercise personal jurisdiction over Navitas pursuant to 28 U.S.C. § 1391 based on the terms of the Warrant Agreement. The Warrant Agreement provides that Navitas, as its predecessor entity, agreed that "any action, proceeding or claim against it arising out of or relating in any way to this Agreement shall be brought and enforced in the courts of the State of New York or the United States District Court for the Southern District of New York, and irrevocably submits to such jurisdiction, which jurisdiction shall be exclusive forum for any such

action, proceeding or claim." Warrant Agreement, § 9.3. As noted above, Navitas assumed Live Oak SPAC's obligations under the Warrant Agreement following the Business Combination.

## PARTIES

14.    Plaintiff JBC Structured Products LLC is a limited liability company incorporated in the State of Pennsylvania with its principal place of business in New Hope, Pennsylvania. JBC is owned and controlled by John Brian Clark, a resident of New Hope, Pennsylvania.

15.    Defendant Navitas Semiconductor Corporation is a private company incorporated under the laws of the state of Delaware with its principal executive offices in Torrance, CA. Navitas common shares are traded on the NASDAQ, based in this District.

## FACTS

**A.  Live Oak SPAC and Navitas' Business Combination.**

16.    A SPAC, also known as a blank check company, is a publicly traded company that holds cash in trust for its investors and exists for the purpose of identifying a non-public target company to combine with in a business combination that provides the target company with capital and brings it public as an alternative to the traditional initial public offering process.

17.    The SPAC operates as a public shell company seeking to acquire a private company through a take-public transaction.

18.    This take-public transaction is referred to as a "de-SPAC" transaction. Following a successful business combination with a target company, investors in the SPAC become shareholders of the target company.

19.    Like other SPACs, Live Oak SPAC's purpose was to identify a private company acquisition target to bring into the public market through a so-called de-SPAC business combination.

20. Through the Business Combination, Navitas would become a publicly listed company that would be listed on the Nasdaq Stock Market LLC ("NASDAQ") under the new ticker symbol "NVTS." The Public Warrants would be listed and trade under the ticker symbol "NVTSW"

21. The Business Combination closed and was consummated on October 19, 2021.

22. Navitas common stock (ticker symbol: NVTS) and Public Warrants (ticker symbol: NVTSW) began publicly trading on the NASDAQ on October 21, 2021

### B. The Warrant Agreement

23. The Public Warrants were issued pursuant to the Live Oak SPAC IPO and governed by the Warrant Agreement between Live Oak SPAC and Continental, and Navitas subsequently assumed Live Oak SPAC's obligations upon the consummation of the Business Combination.

24. Pursuant to Section 4.4 of the Warrant Agreement, the terms of the Warrant Agreement were automatically modified upon the close of the Business Combination to change the Public Warrants' issuer from Live Oak to Navitas.

25. The terms and conditions of the Warrant Agreement are expressly incorporated into each Public Warrant and are enforceable against Navitas by each Public Warrant holder.

26. Pursuant to Sections 3.2 and 3.3 of the Warrant Agreement, the Public Warrants are exercisable 30 days following the completion of the Business Combination, provided the Warrant Shares are registered under the Securities Act and a prospectus relating to the Warrant Shares is current. The Warrant Agreement sets the exercise price as $11.50.

27. The Warrant Agreement also states in pertinent part "in the case of any merger or consolidation of the Company with or into another entity or conversion of the Company as another entity … the holders of the Warrants shall thereafter have the right to purchase and receive, upon

the basis and upon the terms and conditions specified in the Warrants … the kind and amount of shares of stock or other securities … that the holder of the Warrants would have received if such holder had exercised his, her or its Warrant(s) immediately prior to such event…" Warrant Agreement § 4.4. Furthermore, "[a]ll the covenants and provisions of this Agreement by or for the benefit of the Company or the Warrant Agent shall bind and inure to the benefit of their respective successors and assigns." *Id.*, at § 9.1.

28.    Pursuant to Section 7.4 of the Warrant Agreement, Navitas was obligated "as soon as practicable, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination" to "use its best efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the shares of Common Stock issuable upon exercise of the Warrants." Navitas was further obligated to use its "use its best efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants in accordance with the provisions of this Agreement."

29.    Relevant to this dispute, the exercise of the Public Warrants for cash was conditioned upon three requirements. The terms of the Warrant Agreement required the "Exercise Period" be open, the Warrant Shares be registered under the Securities Act, and there be a current prospectus relating to the Warrant Shares. Warrant Agreement § 3.2, 3.3.2.

30.    The exercise period opened December 7, 2021, as the later of the two triggering events commencing the Exercise Period (the latter date being "the date that is twelve (12) months from the date of the closing of the Offering" instead of 30 days after the completion of the Business combination October 19, 2021). Furthermore, the Warrant Shares were registered under the

Securities Act through Navitas' Form S-1 which included a current prospectus relating to the Warrant Shares.

31.    Therefore, pursuant to the terms of the Warrant Agreement, the Public Warrants were exercisable on December 8 and 10, 2021, when JBC sought to exercise its Public Warrants.

**C.  The Registration of the Public Warrants and Warrant Shares on Navitas' Form S-1**

32.    Navitas' Form S-1 filed November 24, 2021, and operative Form S-1 filed December 2, 2021, made it clear that the Public Warrants and the Warrant Shares were registered.

33.    For example, the Calculation of Registration Fee Table submitted at the front of the November 24, 2021, S-1, calculated a registration fee of $13,965 for "Class A Common stock, $0.0001 par value per share, underlying Warrants" with a note that the amount to be registered "[c]onsists of (i) 8,433,333 shares of Class A Common Stock issuable upon exercise of the Public Warrants…"[2] Additionally, the table listed the Warrants to purchase Common Stock.

34.    Furthermore, the operative Form S-1 states, "selling securityholders named in this prospectus may offer and sell from time to time… (ii) up to 87,007,757 shares of our Class A Common Stock consisting of… up to 8,433,333 shares (the "Public Warrant Shares,"…) of Class A Common Stock that are issuable by us upon exercise of the public warrants (the "Public Warrants,"…) that were sold as part of the units in our IPO and that were previously registered." The Form S-1 further states that as a result of the Business Combination, "the Company had the following outstanding securities… 8,433,333 public Warrants… each exercisable for one share of Class A Common Stock at a price of $11.50 per share." [3]

35.    If Navitas had intended to exclude the underlying Warrant Shares from registration on its Form S-1 it would not have listed them in the registration table or provided further

---

[2] See https://ir.navitassemi.com/static-files/94bbcc72-0631-4fd7-a0eb-1dd302ddc476, p. 2 of 252 on PDF.
[3] See https://ir.navitassemi.com/static-files/514b0878-b438-4697-bbac-5bc4981cba93, p. 3, 140 of 245 on PDF

explanation in its prospectus that the Public Warrants and Warrant Shares were registered for offer and sale.

36.     The Prospectus included within the Form S-1 covers in detail the Public Warrants and Warrant Shares.

37.     The Form S-1 did not include any statement or disclosure that the Warrant Shares were not being registered on the Form S-1 or would require a subsequent registration statement to be filed and declared effective prior to the Public Warrants being exercisable.

38.     Based on the Form S-1, Navitas represented to the investing public generally that once the Form S-1 was declared effective by the SEC, and twelve months elapsed from the closing of the Offering, meaning as of December 7, 2021, the Warrant Shares would be registered and assuming the prospectus remained current, the Public Warrants would be exercisable.

39.     SEC regulations, as well as the instructions for Form S-1, make clear that the it may be used to register both warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer.

40.     The Form S-1 registering the Warrant Shares, Public Warrants, and containing a current prospectus relating thereto was declared effective by the SEC on December 6, 2021.

41.     The final condition of the Exercise Period opening occurred December 7, 2021, satisfying the conditions for the exercise of the Public Warrants.

42.     Therefore, pursuant to the plain terms of the Warrant Agreement, the Public Warrants were exercisable.

**D. Navitas Refuses to Acknowledge That the Public Warrants Were Exercisable**

43.     Even though the Public Warrants became exercisable December 7, 2021, Navitas improperly repudiated its obligations under the Warrant Agreement and prevented and/or caused

JBC's exercise of its Public Warrants to purchase Navitas' common shares for $11.50 per share to be denied by JBC's broker, IBCS.

44.    JBC made an initial attempt to exercise its Public Warrants on December 8, 2021, which was denied by JBC's broker, IBCS. The reason provided by IBCS was that the Public Warrants were not "open for exercise."

45.    JBC made a subsequent attempt to exercise its Public Warrants on December 10, 2021, through its broker. Again, JBC's attempt was denied by IBCS because the "NVTS Warrants are not currently open for exercise."

46.    Upon information and belief, Navitas did not take the steps necessary for JBC to exercise its Public Warrants, such as not providing the necessary documentation to Continental so that it could open the exercise for brokers and process exercise notices.

47.    The Public Warrants were exercisable pursuant to the clear and unambiguous terms of the Warrant Agreement beginning on December 7, 2021, because (a) twelve (12) months had passed since the Offering closed, opening the Exercise Period; (b) the Warrant Shares and Warrants had been registered via an effective registration statement on the Forms S-1 filed December 2, 2021 and declared effective December 6, 2021; and (c) there was a current prospectus relating to the Warrant Shares.

48.    JBC intended to exercise its Public Warrants and attempted to do so December 8, 2021, and December 10, 2021.

49.    As a direct and proximate result of Navitas repudiating its obligations under the Warrant Agreement and preventing JBC from exercising its Public Warrants that JBC would have sold for profits for shares in Navitas and/or causing JBC's exercise attempts to be denied, JBC suffered over one million dollars in damages.

**COUNT I: Breach of Contract—Failure to Exercise the Public Warrants**

50.     JBC repeats each of the foregoing allegations as if fully set forth herein.

51.     The Warrant Agreement is an enforceable contract that Navitas expressly assumed.

52.     Between November 24, 2021, and February 7, 2022, JBC was the beneficial owner of Public Warrants of Navitas.

53.     JBC performed its obligations under the Warrant Agreement.

54.     Pursuant to the clear and unambiguous terms of the Warrant Agreement, Navitas' Public Warrants were exercisable as of December 7, 2021.

55.     Navitas failed to acknowledge that the Public Warrants were exercisable or take the necessary action to permit JBC to exercise the Public Warrants December 8 and 10, 2021, and by effectively preventing JBC's lawful exercise attempt through its action and/or inaction, Navitas materially breached and repudiated its obligations under the Warrant Agreement.

56.     As a direct and proximate consequence of Navitas' repudiation and material breach of the Warrant Agreement, JBC were denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT II: Breach of Contract (in the Alternative)—Failure to Register the Warrant Shares**

57.     JBC repeats each of the foregoing allegations as if fully set forth herein.

58.     Alternatively, and assuming Navitas failed to effectively register the Warrants and the Warrant Shares through the Form S-1, Navitas breached the plain and unambiguous terms of the Warrant Agreement. Navitas could have registered the Warrant Shares on its Form S-4 and/or its Form S-1.

59.     JBC fulfilled its obligations under the Warrant Agreement.

60.    Pursuant to Section 7.4 of the Warrant Agreement, Navitas was obligated "as soon as practicable, but in no event later than fifteen (15) Business Days after the closing of its initial Business Combination" to "use its commercially reasonable efforts to file with the [SEC] a post-effective amendment to the Registration Statement or a new registration statement for the registration, under the Securities Act, of the issuance of the shares of Common Stock issuable upon exercise of the Warrant." Navitas was further obligated to use its "use its best efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the shares of Common Stock issuable upon exercise of the Warrants." of the Business Combination and to "use its best efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants in accordance with the provisions of this Agreement."

61.    Registration of the Warrants and Warrant Shares pursuant to a Form S-4 registration statement is an accepted practice for SPAC mergers and in this matter was required by the Warrant Agreement's as soon as practicable language. Additionally, registration of the Warrants and Warrants shares pursuant to a Form S-1 would have been acceptable in this matter, by registering the Warrants and Warrant Shares prior to the Exercise Period opening.

62.    Should Navitas state it did not allow the exercise because the Warrants and/or Warrant Shares were not registered under the Securities Act at the time JBC sought to exercise, the Company breached its obligation to register the Warrant Shares "as soon as practicable."

63.    As a direct and proximate consequence of this material breach of the Warrant Agreement, JBC was denied the opportunity to exercise the Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT III: Breach of Contract (in the Alternative)—Failure to Maintain a Current Prospectus**

64. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

65. Alternatively, and assuming Navitas failed to provide a current prospectus through the Form S-1, Navitas breached the plain and unambiguous terms of the Warrant Agreement. Navitas could have and did include a prospectus covering the Warrants and Warrant Shares on its Form S-4 and Form S-1.

66. Plaintiff fulfilled its obligations under the Warrant Agreement.

67. Pursuant to Section 7.4 of the Warrant Agreement, Navitas was obligated to "use its best efforts to cause the same [registration] to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration of the Warrants in accordance with the provisions of this Agreement."

68. Alternatively, and to the extent that Navitas may claim that the prospectus relating the Warrant Shares was not current between December 8 and 10, 2021, Navitas breached its obligation to maintain a current prospectus relating to the Warrant Shares until the expiration of the Public Warrants.

69. As a direct and proximate consequence of this material breach of the Warrant Agreement, JBC was denied the opportunity to exercise its Public Warrants and suffered significant monetary damages in an amount to be determined at trial.

**COUNT IV: Breach of Implied Covenant of Good Faith and Fair Dealing (in the alternative)—Failure to Take Necessary Action(s) Opening the Exercise Period**

70. Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

71. The Warrant Agreement is an enforceable contract that Navitas expressly assumed.

72.    Further, JBC was the beneficiary of the Public Warrants it held pursuant to the Warrant Agreement. As the third-party beneficiary JBC had the rights under the Warrant Agreement to exercise the Public Warrants it held.

73.    Navitas breached the implied covenant of good faith and fair dealing in the Warrant Agreement by deliberately not taking necessary action(s) to open for exercise the Public Warrants, and which did impede and prevent JBC from exercising its Public Warrants. Upon information and belief, this inaction may include not providing necessary paperwork or approval to Continental and/or the Warrant Agent for the exercise of the Public Warrants.

74.    Navitas' breaches of its duty of good faith and fair dealing have substantially impaired JBC's ability to maximize the value of its Public Warrants by preventing JBC from exercising its Public Warrants when it was most profitable to do so and causing JBC to mitigate its damages by selling its Public Warrants at a loss.[4]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

A.    Awarding general and compensatory damages to Plaintiff in an amount to be determined at trial;

B.    Awarding Plaintiff costs and disbursements, including attorney's fees, related to this dispute;

C.    Prejudgment and post-judgment interest; and

D.    Granting such other and further relief as the Court deems just and proper.

---

[4] *See VXI Lux Holdco S.A.R.L. v. SIC Holdings*, LLC, 171 A.D.3d 189, 195, 98 N.Y.S.3d 1 [1st Dept. 2019] ("[D]efendants should not be permitted to benefit from the nonexistence of any condition precedent where it is alleged that defendants themselves have frustrated or prevented the occurrence of the condition (*see A.H.A. Gen. Constr. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 31, 677 N.Y.S.2d 9, 699 N.E.2d 368 [1998]).

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: April 21, 2026

      Oklahoma City, OK

          Respectfully submitted,

          /s/ *William B. Federman*
          William B. Federman
          (SBN 2215341)
          FEDERMAN & SHERWOOD
          10205 N. Pennsylvania Ave.
          Oklahoma City, Oklahoma 73120
          P: (405) 235-1560 F: (405) 239-2112
          wbf@federmanlaw.com
          *Attorney for Plaintiff*

          Attorneys' lien claimed